The next case on the calendar is Munoz-Gonzalez v. D.L.C. Limousine. We move from marijuana to taxicabs. Yes. Good morning, Your Honors, and may it please the Court, my name is Jeffrey McGuire from Borelli & Associates, and I represent the Plaintiff Appellants. The Plaintiffs are asking the Court to reverse the District Court's order granting summary judgment in Defendant Apley's favor on the basis that Defendant's business is exactly as its name suggests, a limousine company, and is not a business of operating taxicabs under 29 U.S.C. 213b17, which is otherwise known as the taxicab exemption. In finding that in Defendant's favor, exempting plaintiffs from overtime pay under the Fair Labor Standards Act, the District Court committed three main errors. One, the District Court failed to apply a plain reading of the business of operating taxicabs definition in the Department of Labor's field operations handbook. Two, the District Court improperly held that D.L.C. Limousine did not operate as an airport limousine service under the handbook's examples of non-exempt work. And three, the District Court failed to give appropriate consideration or weight to other relevant factors that are not contained within the handbook. Can I ask in the Encino motor cars, which was just decided recently by the Supreme Court, they were interpreting a different exemption in the statute. I think it was salesman, partsman, mechanics primarily engaged in servicing or selling automobiles. But they went to the dictionary for understanding what a salesman is, and I'm wondering if that would help us in this case. So we are interpreting the statute, so we need to know the meaning of what it means to say that someone is in the business of operating taxicabs. And if you look at dictionaries of the time, they seem to say passenger vehicles available for hire by individuals with no fixed schedule or route. Is that a good definition of what we're after here, and how does that affect your position in this litigation? I believe that the Supreme Court decision certainly was weighing upon a statute that was defined within the exemptions. And Justice Thomas's point was that when there's legislation in the Fair Labor Standards Act, whether it's an exemption or not, it paid the price of legislation and is therefore should be given a fair reading. The court has no more than a license to give a fair reading. Here, the statutory text is not helpful, and there are no regulations. To put a spin on Judge Livingston's question, just the everyday common definition of a taxicab. Why don't these cars fit? Well, I believe that this company, as it represents itself, a limousine service, and I think that there are relevant factors. Between a taxicab and a limousine, are they mutually exclusive? Yes, Your Honor, I believe that they are. Why? Well, a limousine company, if you look at the handbook, and I know that that's what courts have consistently done, but they've also considered factors not within the handbook. Getting back to the handbook, and we should get there, but before we get there, in terms of a dictionary definition, everyday, common, meaning, what is a taxicab, and do the cars here fit within that common definition? I believe that they don't, because there's no taxometers, taxi meters on limousines. They certainly- No meters? The difference that dictionaries of the time did not necessarily require a meter on a taxi. Well, I believe that the definition in Oxford for a taxi is exactly that, that it has a taxi meter, and that, of course, there was a running fare that would be paid based upon the driver's pickup point to the taxicab driver's drop-off point. That wouldn't necessarily apply to a limousine, which has a flat fare that is paid even before the taxicab driver starts driving, or the limousine driver starts driving. So I believe that under the dictionary, certainly there's a distinction between a limousine driver and a taxicab driver, but again, looking at the definitions, which courts have routinely tried to do, I do believe that they are not helpful in this situation. And you think the field operations handbook is more helpful? Well, I believe courts have consistently relied upon the Department of Labor's handbook, mostly because there is no statutory language, and there certainly are no regulations, and so the interpretive materials of the handbook are really what courts have to go on. But there also are common factors that courts have continually applied, and I believe in McKinney v. Med Transport, the court indicated that it was a balancing of these relevant factors that was required of the courts, with different degrees to be given to each factor. What difference should it make to us, if any, that it doesn't seem to me, from looking at this case, that the defendant's business has changed substantially since 2005, and maybe that doesn't matter, but the limousine service has changed its name. That I noticed. The company has gotten some contracts with a local hotel, and with Pepsi, they don't amount to much of its business, and it's increased the size of its fleet. Am I missing anything else that has changed since then? Yes, Your Honor. I believe that following the 2005 decision, there were definitely changes in terms of how the business advertised itself, and the contracts that it entered into, and, of course, it did expand the business. But I believe there's an inherent problem with the Cariani decision itself. And that case did not have a developed record before it, and courts have criticized Cariani for failing to look at the handbook's specific examples of non-exempt work, with one being an airport limousine service. And I think here that the record is clear. Let me ask you something. The airport limousine service, that term is in the handbook. It is not in the statute. So the need to distinguish between airport limousine services and taxi cabs is a just making sure I understand my position, the materials that are before me. The need to distinguish depends on the deference we give to the handbook. That's correct, Your Honor. And I believe that the handbook is persuasive for that reason. And with respect to the recurrent contracts, following the Cariani decision, DLC Limousine did enter into two such recurrent contracts, one with the Dora Larratt Hotel to provide chauffeur transportation to the hotel's guests, and one with PepsiCo. Do you agree, though, that the total business from the recurrent contracts is ballpark 2 percent? Well, of the airport, of the total business, yes. But if you take out the airport limousine work, that percentage actually makes up a large percentage of the point-to-point limousine work. Just so we're clear, there's no disagreement about the facts, right? I mean, the facts are undisputed. They are what they are. These facts are largely undisputed. But I'd also like to mention that the handbook itself provides four sentences. And the second sentence is the only one with unqualified language. It's unequivocal that a business of operating taxi cabs operates without fixed routes or contracts for recurrent transportation. All three other sentences have some type of qualifying language. But isn't there a tension, then, in your argument? Because I think what you're saying is that you don't want us to ñ the recurring contracts should not have had a significant qualifier placed on them by the district court. Is that correct? No. I believe that the district court is using the word predominantly in the third sentence of the handbook in the second sentence. Yes. And you're saying it should not be, correct? I'm saying that that's the only unequivocal statement. So any contracts for recurrent transportation would disqualify it from the taxi cab exemption. My point, sir, is I think you also say that we should read these exemptions very narrowly. Is that also correct? That's correct, Your Honor. Is there a tension in asking us to do that and in also suggesting to us factors outside of the handbook that we are to consider in making a determination? Well, no. I believe it's a balancing of the factors. I don't believe ñ well, I believe that the handbook is the first thing to look at. There's also other factors, and I think it's important to note both the Fourth and Sixth Circuit, which both focused on a driver's ability to arrange their own time. A taxi cab driver is free to organize their own time and use their independent initiative to secure patronage, where a limousine driver does the work laid out for the driver. Of course, but is that anywhere in the handbook? That is only with respect to the airport limousine service, but the fact that the Department of Labor used the word limousine service shows intent to distinguish between a limousine service and a taxi cab service, and that was observed by two courts following Cariani, Rossi v. Associated Limousine and McKinney v. MedTransport. Thank you, Your Honors. Good afternoon, Your Honors. Good morning, actually. I'm sorry. May it please the Court. Joanna Sandolo for the appellees. I think that Your Honors hit upon the critical issue here in addressing the appellant's argument, and that is that what appellants have tried to do is use the word limousine and elevate form over substance and essentially create the impression that the appellee's business is something other than what it actually is, which is a taxi cab business. The website, which is in the appendix, shows minicoaches, motorcoaches. Yes, Your Honor, it does. Are they part of the business? Not really, Your Honor. I would characterize it as puffery, what's in the website. Those are vehicles that are not within DLC's fleet of cars, but they are cars that if you called up and you said, I need to order a minicoach for my son's graduation or my son's prom, they could get that for you by contracting with another party and arrange that for you. Importantly on that point, the drivers who are the plaintiffs in this case never drove any of those vehicles. They drove taxi cabs. They were compensated in accordance with the FLSA for how taxi cab drivers are to be paid, and is that they're exempt from overtime. I didn't see anything that talked about the purpose of the taxi cab exemption. Your Honor, there's Is there anything that tells us what the purpose is? No. There are cases that have looked for it and been unable to find much. There are cases that kind of surmise about what it may have been. Maybe it's a kind of business that's difficult to maintain at 40 hours a week, or it's hard to keep track of, or you can't swap out another employee. But there hasn't been any real elucidation by the legislature of what the intent was behind the taxi cab exemption. Isn't it, therefore, a little bit of an overstatement by you to suggest that the law in this area is settled? I think the law in the district courts in New York is pretty clear, and it's pretty consistent. Law in the district courts in New York, Judge McMahon's decision, Judge Etkin's decision, and- And Arena versus Plenum, which is out in the Eastern District. And Etkin, obviously, the judge herein, who I think- The decision is completely in accord with Cariani, which was the decision from 2005. And to Justice Livingston's question, the business hasn't really changed in any material way since 2005. There are more cars, and there are two contracts. We dispute whether or not there are really contracts for recurrent transportation. But the business operates in generally the same way that it has, which is the bulk of the business, approximately 80% of the business, is generated from a taxi stand at the Westchester County Airport. And one thing that I think is important- Why is this not an airport limousine service if 80% of the business comes out of the airport? Because it fits within the district court found, and I think rightly so, that it fits within the definition, the Field Operations Handbook's definition of a business of operating taxi cabs. So therefore, it's not a limousine business. There is no definition anywhere of what constitutes an airport limousine. Some of the cases have addressed facts that you would think of something would be an airport limousine, like the Abel case out of the 11th Circuit that addressed the super shuttle van that was an airport limousine. In the district court, what they found important was that you're not limited to going to the airport. You can go anywhere by these cars. And the other circuit courts who have addressed this issue picked up on that kind of factor as being important, the convenience of the passenger. Both the 11th Circuit and the 4th Circuit addressed the convenience of the passenger in kind of determining whether or not a business was a taxi cab. If you are getting picked up and you have to go with 12 other people to the three local airports, it's not going to be a taxi cab. If you can call on the phone and say, I'd like you to take me from my office to the mall at lunch, it's more likely to be found a taxi cab. And the 11th Circuit in Abel actually gave a useful definition of what it considers a taxi cab, and it says a taxi cab is a small motor vehicle that carries a passenger to any requested destination. The passenger is not required to have an airport destination, is ordinarily not obliged to share the ride with other passengers, and is taken directly to his or her requested destination. The company doesn't pick up passengers in the street who are hailing a cab. Is that true? No, they don't, Your Honor. And in fact, at all relevant times, street hailing in the White Plains area was prohibited by municipal statute, which is a key fact here. The problem is when I think taxi cab, I think of a New York City taxi cab and how it operates. And the courts in White Plains have addressed that very issue, because there is a case, the Kim case that was in the Southern District, and that court said they picked up on the hailing as being an important issue of a taxi cab because they said that hailing a cab in New York City is a time-honored tradition. In White Plains, it's not. You can now, the law was changed in 2016, but at all relevant times to this action, you cannot hail a street cab. You can't hail it. But hailing is not important and a meter is not important. And what is important is that it be a passenger vehicle that will take you where you want to go and that has no fixed schedule or route. Right. Is there really any distinction between a taxi cab service and what you might call a limousine service? There is not much dividing line about what is a taxi and what is a limousine. And what's interesting is in the Cariani decision in 2005, the court actually said, characterized the business, they said it's a limousine company, and then they went on to find that it fell within the taxi cab exemption because, based on the field operations handbook's definition. So I think the moniker limousine doesn't really, it doesn't really mean much and it's certainly not determinative when you look at these factors and you look at the way the business was operated. And it was, it's a taxi stand. There's, in the record, if I direct the court to, I think it's page 567 in the record, there is a photo of the taxi stand at the airport. And, I mean, it's got the checkered bound border from the old checkered New York City cabs and it says taxi. One other important point from the record is that there were trip tickets submitted, both by the appellant and by the appellee below, that detailed some of the trips taken by these particular plaintiffs. They indicate in them. It's 565, but this is the stand at the airport? Yes, Your Honor. Okay. 565 is the stand at the airport and 567, Your Honor, I would also refer your attention to, is a letter from the Westchester County Department of Transportation to DLC from 2010 and it specifically says, DLC has, to the best of my knowledge, provided taxi services to the public. What page was that? This is 567 in the record. So the Westchester County Department of Transportation characterizes what DLC provides as taxi services, which is consistent with really everything else in the factual record. And just to the point about the drivers, the driver trip tickets that were submitted, which I understand is not all of them that were provided in discovery, but there's in excess of 300 of them in the record, it's all taxi sedan when it says what type of vehicle was used. There's no indication that they're driving shuttle buses or any kind of larger vehicle. They're driving taxis and sedans. I think there were five examples where it was an SUV out of 300. And again, I would submit that an SUV is a small passenger vehicle. So I really don't think that there's any dispute that what the drivers here were doing was driving taxi cabs. And I understand that the appellant's suggestion is that the exception has to be narrowly construed. And they take issue with the existence of contracts and with the volume of the airport work. The court below found that the contract work accounts for roughly less than 2% of the business. And according to the plaintiffs, they read the word significant into the field operations handbook. They did? They did. Okay. Why isn't that inappropriate? There is authority for the volume of the contract being a question of degree. That was discussed in the McKinney-Mead transport case, where a business that operates 95% of your business comes from contracts is a different business than one that has a few contracts. So there is an opening there for that analysis. But I also think that while the field operations handbook is persuasive authority, it's not law. So the court can easily find. He can narrowly construe the exemption, which says any driver employed by an employer engaged in the business of operating taxi cabs, without any definition of what that means. They can narrowly construe that term without being forced to check off every box exactly under the terms of the field operations handbook, because the field operations handbook is not law. Correct me if I'm wrong. I thought Encino instructs us not to narrowly construe the exemptions anymore, though our precedent may have said so in the past, and to give them their fair reading. I think that is true. And I think the fair reading is that they were in the business of operating taxi cabs. The other thing that's interesting about the exemptions is that it's not exclusive. It doesn't say that a driver employed by an employer engaged solely in the business of operating taxi cabs. So our argument would be that if you have the company, clearly 80% of its business is generated from the taxi stand at the Westchester Counter Airport. It's a taxi cab business. If they had one other car that wasn't a taxi cab, I don't think it would exclude it or bar the exclusion from applying, because the exclusion is not exclusive. But is it not correct that in his decision, Judge Etkin gave shorter shrift to some of the factors cited by the appellant here on the basis that they were not included within the handbook? He did, yes, Your Honor. He considered them, but he didn't think that they bore the same weight as the factors that were in the field operations handbook. Going back to my earlier questions about tension, is there not a tension in giving a court the authority to narrow what is in the handbook's definition but not allowing it or, yes, giving shorter shrift to these other factors? I guess my concern is are we all in or all out with respect to the handbook definition? I think that it's useful and it's persuasive, but it's obviously not exclusive. And the court considered the other factors below and found them to be not determinative. This court, as well as the Cariani court, and I think the court in Arena, found that the benefit to following the handbook is that it's federal legislation and you would wind up with a more uniform definition across courts rather than having every court come up with their own definition, which would be how you'd have different results all across the country. The tension with that is that, as Judge Chin pointed out, the businesses are different in different places. A taxi cab business in Westchester County is going to be different than a taxi cab company in Manhattan. So I think that while we want to follow the handbook, it can't be every single checkbox, every single thing that's in the handbook because the reality is different, and the reality here is that these drivers, they drove taxi cabs and they were compensated as taxi cab drivers. And looking at the handbook, just Airport Limousine Service, what is your take at what the authors of the handbook had in mind in referring to that? I do think that they meant something akin to a super shuttle that will pick you up and take you to the airport. It won't take you anywhere else. It's an airport service. This is not an airport service. This is distinguishable from that. Thank you, Your Honor. Your Honor, the handbook specifically refers to, in Chapter 24H, a shuttle service along with an airport limousine service. So to say that those two are the same is incorrect. But I'd also like to say that this company operated pursuant to a contract for 35 years with the Westchester County Airport. The drivers did not choose to go to the airport and wait in stands like taxi cab drivers sometimes do. They were required to go and wait at the airport on prearranged schedules. The stand has the word taxi. It also has the word limousine service on it. But they are licensed to have a counter there, a stand there, an office space there, and also parking for the cars. People are at the airport. I don't think anyone really takes a limo in what might be the usual sense. It would seem to be more of a shuttle taking different passengers to different places type scenario. The shuttles are definitely there, and they go point to point. So I think under the second sentence. What is an airport limo service and who takes them? Well, an airport limousine service is getting into a more upscale car than maybe you would take a metered taxi cab. And I think that's the important thing here is that the appellees keep referring to taxi cabs and sedans. But all there is here is sedans and sedans. There are grand marquees. Everyone has it but me, but Uber. Is Uber a taxi cab or is it a limo? They are free to arrange their own time. They don't have to. Taxi cab. They are a taxi cab. There's a question whether they're employees at all. But if they are employees, they are free to organize their own time. They can shut their apps off at any time. They can take independent initiative to secure more patronage just as the Fourth Circuit and Sixth Circuit said. And in the Wirtz case in Sixth Circuit, that case actually specifically dealt with a company that waits at the airport and finding that they were limousines and not taxi cabs. I'd also like to point out that there is another case in the Eastern District, Masco versus EL Transportation. And that case found that it was ambulette drivers, but that case found that prearranged schedules is another reason why the taxi cab exemption didn't apply. And no court that has ever found a contract for current transportation to exist has found the taxi cab exemption to apply. Thank you both for your arguments. Well argued. Thank you, Your Honors. Take it under advisement.